James Earl HURT, Jr., Plaintiff,

v.

PULLMAN STANDARD, INC., a corporation, et al., Defendants.

Civ. A. No. 83–AR–1979–S.

United States District Court, N.D. Alabama, S.D.

April 6, 1984.

Joe R. Whatley, Jr., Stewart, Falkenberry & Whatley, and R. Gordon Pate, Hare, Wynn, Newell, & Newton, Birmingham, Ala., for plaintiff.

James B. Kierce, Jr., James R. Clifton, Stone, Patton, Kierce & Clifton, Bessemer, Ala., William J. Marshall, Jr., Pullman Standard Inc., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

Defendants Pullman Standard, Inc. (formerly Pullman Incorporated) (Pullman) and Pullman Incorporated Non-Contributory Pension Plan (Pullman Plan) have filed a motion for summary judgment. Plaintiff, James Earl Hurt, Jr. (Hurt) has countered with a motion for partial summary judgment. The Court has carefully considered the materials in support of and in opposition to the said motions and finds that the case is an appropriate one for disposition under Rule 56, F.R.Civ.P.

Hurt filed suit against Pullman and Pullman Plan alleging a violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* Hurt claims that he is entitled to a disability pension. *Inter alia,* he alleges that "[s]ince March of 1980, plaintiff has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment with Pullman Incorporated within the category of employees in which he was last employed". As will hereinafter appear, this is a necessary allegation of fact in order for Hurt to be entitled to a disability pension under the Pension Agreement. Not only does Hurt claim that he is entitled to a disability pension, but demands damages, including punitive damages, for an alleged breach of a fiduciary duty and a bad faith breach of that duty causing him mental anguish and emotional distress.

The undisputed pertinent facts are these:

1. On March 27, 1980, Hurt injured his left wrist while working for Pullman. His injury was covered by workmen's compensation. There were four separate surgical procedures performed on the wrist during the next three years. Finally Hurt was certified by Pullman's doctor as fit to return to his duties as of January 27, 1983, at which time Pullman terminated Hurt's temporary total disability compensation.

2. Hurt disputed the termination of workmen's compensation benefits, and on April 12, 1983, Pullman filed an action in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV 83–194), seeking *inter alia,* a declaration of the respective rights of the parties. Pullman expressly alleged:

A dispute has arisen between the parties as to the kind, nature and extent of any disability suffered by defendant [Hurt].

Hurt not only asserted in said CV 83–194 that his disability was permanent and total, but filed a counterclaim against Pullman. *Inter alia,* Hurt's counterclaim contained the following allegations:

Defendant [Hurt] avers that the plaintiff [Pullman] has failed to provide the benefits owed to the defendant [Hurt] pursuant to that relationship [employer-em-

ployee] and pursuant to the duties imposed upon it by law.

\* \* \* \* \* \*

Defendant [Hurt] avers that defendant has made repeated demands on plaintiff [Pullman] for plaintiff to fulfill its fiduciary obligations to the defendant as well as its common law and statutory obligations. Defendant avers that plaintiff has repeatedly refused to do so, and said refusal has included an arbitrary and capricious refusal to [do so] ...

In his prayer Hurt sought in his counterclaim:

... all sums due him by law, and in addition the sum of One Million Dollars ($1,000,000.00) in punitive damages for: (a) the willful and wanton breach of the fiduciary relationship existing between said plaintiff and defendant; (b) for bad faith on the part of the plaintiff in its dealings with the defendant; (c) for the plaintiff's arbitrary and capricious refusal to fulfill its obligations due the defendant under the law.

3. The Pension Agreement upon which Hurt necessarily relies provides, in pertinent part:

Any participant who shall have at least fifteen (15) years of continuous service and *who shall have become totally and permanently disabled* shall be eligible to retire on or after September 30, 1977 and shall upon his retirement (hereinafter "total and permanent disability retirement") be eligible for a pension computed in accordance with paragraph 13 of Section III hereof. A participant shall be considered to be totally and permanently disabled (as "totally and permanently disabled" is used herein) *only if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment with the Company [Pullman] within the category of employees* (e.g. production and maintenance, clerical and technical) *in which he was last employed* and (a) said disability shall have continued for a period of six (6) consecutive months and, subject to paragraph 3 of Section XIII hereof, in the opinion of a qualified physician selected by the Company [Pullman], will be permanent and continuous during the remainder of his life... (emphasis supplied).

The same Pension Agreement states that the pension plan is financed by Pullman through contributions to trust funds which are held by Pullman. Pullman Plan is no more than a name for the plan. The Pension Agreement contains the following language:

Benefits under the plan are provided by Pullman ... which is the plan *administrator, trustee* and *agent* for service of legal process under the plan. (emphasis supplied).

4. The state court in said CV 83–194, in its findings of fact, made the following significant finding:

Sifting all the evidence in the case, the Court finds and concludes that Mr. Hurt *was able to return to work as of January 27, 1983* and that he has suffered a 40% permanent *partial* disability to his left hand. (emphasis supplied).

The court in said CV 83–194 went on to determine that Hurt was no longer entitled to any temporary total disability compensation and entered judgment in favor of Pullman both on its complaint and on Hurt's counterclaim. No appeal has been taken from the final decree.

■ On these undisputed facts, Pullman and Pullman Plan seek summary judgment on the basis of *res judicata* or collateral estoppel, or both. Pullman and Pullman Plan persuasively argue that Hurt's present claim should have been pleaded as a compulsory counterclaim in state court in said CV 83–194 pursuant to Rule 13(a), A.R.Civ.P. Rule 13(a), A.R.Civ.P., is patterned after Rule 13(a), F.R.Civ.P., and is identical in all pertinent respects. It defines a compulsory counterclaim as any claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim..." In Alabama, the logical relation test is applied to determine whether or not a particular claim

is compulsory. *Ex parte Fletcher,* 429 So.2d 1041 (Ala.1982); *Brooks v. Peoples National Bank of Huntsville,* 414 So.2d 917 (Ala.1982). The same rule applies in the Eleventh Circuit, by adoption from the Fifth Circuit. *Bonner v. City of Pritchard,* 661 F.2d 1206 (11th Cir.1981); *United States v. Aronson,* 617 F.2d 119 (5th Cir. 1980); *Revere Copper and Brass, Inc. v. Aetna Casualty and Surety Co.,* 426 F.2d 709 (5th Cir.1970). Under this test a logical relationship exists for the purposes of Rule 13(a) if "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant". *Plant v. Blazer Financial Services, Inc. of Georgia,* 598 F.2d 1357, 1361 (5th Cir.1979). In an attempt to avoid an application of the doctrines of *res judicata* and collateral estoppel, Hurt argues that his suit in this Court raises questions different from the questions presented in the state court proceedings and here necessarily involves the Pullman Plan as a party whereas Pullman Plan was not an indispensable party in the state suit. While it is true that Pullman Plan was not a party in the state court, the fact remains that the "aggregate core of facts" used to establish Hurt's medical condition in the state court are logically related to, if not identical to, the facts which must form the basis of his claim in this Court, and there clearly appears to be privity between Pullman and Pullman Plan in this context. For the purposes of the administration of the Pension Agreement the Pullman Plan is simply a depository for Pullman.

The state court in CV 83–194 had jurisdiction to hear and to adjudicate Hurt's ERISA claim, 29 U.S.C. § 1132(e)(1), and Pullman Plan could easily have been joined by Hurt in that suit. "One who has a counterclaim arising out of the same transaction or occurrence and does not advance it will be thereafter precluded from asserting it." *Lawhorn v. Atlantic Refining Co.,* 299 F.2d 353, 356 (5th Cir.1962); *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). This Court finds that Hurt's ERISA claim constituted a compulsory counterclaim in CV 83–194. Not having been asserted there Hurt's claim in this Court is precluded.

▮ This does not, however, conclude the analysis in this particular case, because even if Hurt's ERISA claim did not constitute a compulsory counterclaim in the state action, the fact is that *Hurt did file a counterclaim* against Pullman in the state court. The doctrine of *res judicata* holds that a party who files suit against another party must present all of his related claims against that party and an adjudication is final not only as to the issues which were in fact litigated, but as to those issues which *could have been litigated. Walter E. Heller & Co. v. Cox,* 343 F.Supp. 519 (S.D.N.Y.1972), *aff'd sub nom. Walter E. Heller & Co. v. Ocean Air Tradeways,* 486 F.2d 1398 (2nd Cir.1973); *Hathcock v. Mitchell,* 277 Ala. 586, 173 So.2d 576 (1965). As recently as February 24, 1984, the Eleventh Circuit in *Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 632 (11th Cir.1984) said of *res judicata:*

> The bar extends not only to the precise legal theory presented in the previous litigation, but to *all legal theories and claims* arising out of the same "operative nucleus of fact." (emphasis supplied).

Hurt actually litigated his claims of breach of fiduciary obligation and bad faith and *could have litigated* his ERISA claim as part of his counterclaim in CV 83–194. The mere fact that Hurt was represented by different counsel in the state court proceeding does not protect him against the bar of *res judicata.*

▮ Even if Hurt escapes the absolute bar of *res judicata* with his argument that Pullman Plan is somehow so separate and distinct from Pullman so as not to be in privity with it and that his ERISA claim is remote from his other claim, Hurt runs into the doctrine of collateral estoppel, which operates beyond the parameters of *res judicata* as to factual issues *actually litigated.* In CV 83–194 the factual question of

Hurt's physical condition was *actually litigated* and the state court found that "Hurt was able to return to work". This certainly constituted a finding which precludes a subsequent contrary finding. A contrary finding would be required in the instant case (namely, "total and permanent disability") if Hurt is to recover. He is barred by collateral estoppel.

■ Not only are Hurt's pendent state claims of bad faith and breach of fiduciary obligation barred by *res judicata,* but the law of Alabama does not recognize the tort of "bad faith" except in the insurance context. *Kennedy Electric Co., Inc. v. Moore-Handley, Inc.,* 437 So.2d 76 (Ala.1983). Hurt does not here sue on an insurance policy.

The rationale for the doctrines of *res judicata* and collateral estoppel and the rationale for Rule 56, F.R.Civ.P., overlap. All these rules are designed to terminate non-meritorious litigation without an undue expenditure of judicial time and effort. In this case, Hurt has not come forward with any potential fact in dispute which would give viability to his claim. He had his day in court in CV 83–194. If the state court was wrong, Hurt's remedy was an appeal to the Supreme Court of Alabama, and not a separate law suit in this Court.

An appropriate order will be entered.