**James Earl HURT, Jr., Plaintiff-Appellant,**

v.

**PULLMAN INCORPORATED, a corporation, and Pullman Incorporated Non-Contributory Pension Plan, Defendants-Appellees.**

**No. 84–7257.**

United States Court of Appeals, Eleventh Circuit.

July 9, 1985.

Joe R. Whatley, Jr., Stewart, Falkenberry & Whatley, Birmingham, Ala., for plaintiff-appellant.

Stone Patton Kierce & Clifton, James B. Kierce, Jr., Bessemer, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant James Earl Hurt, Jr. ("Hurt") appeals the grant of summary judgment in favor of appellees Pullman Incorporated ("Pullman") and Pullman Incorporated Non-Contributory Pension Plan ("Pension Plan") with regard to his claim under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001, *et seq.*, and with regard to pendent Alabama state law claims of breach of fiduciary duty and bad faith. The district court held that in light of a prior workmen's compensation judgment in state court, Hurt was barred by the doctrine of *res judicata* from bringing his claims in federal court. Alternatively, the district court held that the Alabama court had fully and fairly litigated an issue which was dispositive of Hurt's claims and, thus, he was precluded by the doctrine of collateral estoppel.[1] *Hurt v. Pullman Standard, Inc.*, 582 F.Supp. 856 (N.D.Ala.1984). In addition, with respect to one of Hurt's pendent state claims, the tort of bad faith, the district court dismissed on the alternative ground that bad faith is applicable only in the insurance context. *Id.* at 860. With respect to both *res judicata* and collateral estoppel, Alabama law requires "substantial identity" of parties for one lawsuit to have preclusive effect upon the other. We find that substantial identity of the parties is lacking between the workmen's compensation proceeding and the instant case and, thus, reverse and remand for further proceedings. However, with respect to Hurt's pendent claim of bad faith only, we affirm the decision of the district court.[2]

## I. FACTS AND PROCEDURAL BACKGROUND

Hurt worked for Pullman from February, 1963 until March, 1980. On March 27, 1980, Hurt was injured when a board he was using as a pry bar broke and struck him on the wrist. Shortly after the accident, Hurt was referred by Pullman to the company physician who treated Hurt for nearly three years and performed four operations on the injured wrist. During this period of treatment, Hurt was paid temporary total disability compensation, and medical treatment was provided, by Pullman pursuant to the Alabama Workmen's Compensation Act. *See* Ala.Code §§ 25–5–57(a)(1), 25–5–77. On February 1, 1983, the company physician reported to Pullman that Hurt was able to return to work. Thereafter, Pullman terminated all compensation it had been paying Hurt under the Workmen's Compensation Act.

A dispute arose between Pullman and Hurt as to the termination of compensa-

---

\* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. We use the term "collateral estoppel" synonymously with the idea of issue preclusion, *i.e.*, that an issue which has been fully and fairly litigated and decided in another forum may not, if certain necessary conditions are met, be relitigated in a subsequent proceeding involving the same parties. We use the term *"res judicata"* synonymously with the idea of claim preclusion, *i.e.*, that a litigant is, if certain necessary conditions are met, barred in a subsequent proceeding from raising claims which were litigat-

ed or reasonably should have been litigated in a previous lawsuit involving the same parties. For a complete and helpful description of the terminology in this area, *see First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 747 F.2d 1367, 1371 n. 8 (11th Cir.1984).

2. The district court dismissed the bad faith claim for failure to state a claim under Alabama law citing *Kennedy Electric Co. v. Moore-Handley, Inc.*, 437 So.2d 76 (Ala.1983). *See Hurt v. Pullman Standard, Inc.*, 582 F.Supp. 856, 860 (N.D.Ala.1984). We affirm this ruling without need for further discussion.

tion, Hurt arguing that his disability entitled him to continuing compensation and medical benefits under the Workmen's Compensation Act. In order to resolve the dispute, Pullman sued Hurt in the Circuit Court of Jefferson County, Alabama, for a declaration of its workmen's compensation obligations under Ala.Code §§ 25–5–81, 25–5–88 (setting out civil procedures for determination of disputes under the Workmen's Compensation Act). *Pullman-Standard, Inc. v. James Hurt,* No. CV 83–194 (Cir.Ct. Jefferson Cty., Ala.), Record at 120. Hurt counterclaimed that Pullman had breached a common law and statutory fiduciary relationship between himself and Pullman because of Pullman's "arbitrary and capricious refusal to pay medical bills ... and disability benefits." Record at 124–25. Hurt also claimed that Pullman was liable under the common law doctrine of bad faith. *Id.* at 125.

Pullman moved for summary judgment on Hurt's counterclaim. On November 21, 1983, the state trial judge entered an order granting summary judgment in Pullman's favor on the entirety of Hurt's counterclaim. *Id.* at 127. On January 9, 1984, after a full trial, the trial judge issued his opinion on the primary dispute. The trial judge noted that Pullman had already paid Hurt a total of $18,690.30 in temporary total disability compensation plus all of Hurt's doctor, hospital and drug bills from the time of the injury until January 27, 1983. The court then made the following finding:

> Sifting all the evidence in the case, the Court finds and concludes that Mr. Hurt was able to return to work as of January 27, 1983 and that he has suffered a forty percent permanent partial disability to his left hand.

State court opinion at 3, Record at 130. As a result of this finding, the state court awarded Hurt $9,248 in permanent partial disability benefits, representing the total amount of Pullman's obligation under the

Worker's Compensation Act, in addition to the amounts already paid, for the 40% permanent impairment of Hurt's left hand.

On August 18, 1983, during the pendency of the state workmen's compensation action, Hurt filed the instant case against Pullman and the Pension Plan in federal court, alleging that under ERISA he was entitled to disability benefits pursuant to an ERISA pension agreement between Pullman and Hurt's union, the United Steelworkers of America ("Pension Agreement"). Hurt also alleged pendent state claims of breach of fiduciary duty and bad faith.[3] The district court found that Hurt was collaterally estopped from raising the issue of his disability in federal court. Since, as the district court held, the Pension Agreement required total and permanent disability (defined as an employee's inability to return to work among his prior "category of employees") to enable a Pullman employee to collect disability benefits, the Alabama state court's finding that Hurt could return to work was a prior determination of the same issue and, as such, could not be relitigated in federal court under the collateral estoppel doctrine. Thus, collateral estoppel precluded Hurt from recovering on his ERISA claim and the pendent state claims. *Hurt v. Pullman Standard, Inc.,* 582 F.Supp. at 860. Alternatively, the district court found that the doctrine of *res judicata* barred Hurt from bringing the instant action in federal court. First, the district court held that since the ERISA claim was based on the same historical facts as the workmen's compensation action, it was a compulsory counterclaim under Alabama law. *Id.* at 858–59; *see* Ala.R.Civ.P. 13(a). A compulsory counterclaim is lost if not pleaded. Second, the court held that even if the ERISA claim was not properly considered a compulsory counterclaim under Alabama law, it did arise out of the same operative facts as the counterclaim which Hurt had

---

**3.** Our holding in this case—that Pullman and the Pension Plan are not in privity with one another and, therefore, that the doctrines of *res judicata* and collateral estoppel do not bar Hurt's claims in federal court—applies, of course, to Hurt's pendent state claims as well as his ERISA claim. However, as we have indicated, the pendent state claim of bad faith was properly dismissed on independent legal grounds. *See supra* note 2.

actually asserted. *Id.* at 859. Therefore, the district court found that Hurt's claims were *res judicata* in any event. The district court granted the defendants' motion for summary judgment on the *res judicata* and collateral estoppel issues. This appeal ensued.

## II. DISCUSSION

### A. *Res Judicata*

■ Under Alabama law,[4] "[t]he elements of res judicata are as follows:

(1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits.

*Wheeler v. First Alabama Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala.1978), citing *Stephenson v. Int'l Paper Co.,* 516 F.2d 103 (5th Cir.1975). A former adjudication may only be a bar to a subsequent suit if all four elements are present. The parties agree that the workmen's compensation judgment was rendered by a court of competent jurisdiction and was rendered on the merits. However, as indicated by our discussion below, the parties in both suits are not "substantially identical." Thus, we need not reach the question whether in the instant case Hurt is suing on the "same cause of action" as was present in the workmen's compensation action.

In the workmen's compensation action, Pullman sued Hurt for a declaratory judgment under the Workmen's Compensation Act. In the instant case, Hurt sued both Pullman and the Pension Plan under ERISA and pendent state law theories.[5] Hurt claims that the Pension Plan breached its fiduciary duty under ERISA by failing to pay him disability benefits as allegedly required under the. Pension Agreement. There is a difference among the parties in the two suits, since the Pension Plan did not participate in the workmen's compensation action. Under Alabama law, however, the notion of "substantial identity" of parties does not require absolute identity, but extends as well to persons or entities in privity with those who did in fact litigate in the former action. *See Teague v. Motes,* 57 Ala.App. 609, 330 So.2d 434, 437–38 (1976); *Suggs v. Alabama Power Co.,* 271 Ala. 168, 123 So.2d 4, 7 (1960); *Sosebee v. Alabama Farm Bureau Mutual Casualty Ins. Co.,* 56 Ala.App. 334, 321 So.2d 676, 678 (1975). *See also* 1B *Moore's Federal Practice* ¶ 0.411[1] (2d ed. 1984) (indicating that the terms "substantial identity of parties" and "privity" have the same meaning in *res judicata* jurisprudence). Regardless of label, the question in this case is whether the relationship between the Pension Plan and Pullman is sufficiently close that the results of Pullman's participation in the first suit, assuming the other elements of *res judicata* have been met, ought in fair-

---

**4.** The Alabama law of *res judicata* is applicable in this case because we are addressing the question of the preclusive effect of an Alabama state court judgment on a subsequent proceeding in federal court. Under the federal full faith and credit statute, 28 U.S.C.A. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, ——, 104 S.Ct. 892, 895, 79 L.Ed.2d 56, 61 (1984). We hold in this opinion that Pullman and the Pension Plan are not in privity with one another and, therefore, that the district court's holdings in favor of Pullman and the Pension Plan on *res judicata* and collateral estoppel grounds were erroneous. The principle upon which we rely in making this determination—that Pullman was acting in a different capacity in the workmen's compensation action from the capacity in

which it and the Pension Plan must act in the instant action—has not been explicitly enunciated in the Alabama case law. However, since this principle is rudimentary to the law of *res judicata,* see discussion in text *infra,* we are confident that it is in fact a part of the Alabama common law and would be embraced by the Alabama Supreme Court whenever necessary.

**5.** The Pension Plan was the proper entity for Hurt to sue on the ERISA claim and the pendent state claims. 29 U.S.C.A. § 1132(d)(1); *cf.* 29 U.S.C.A. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity ..."). Hurt named Pullman, presumably, as trustee of the Pension Plan. *Cf.* 29 U.S.C.A. § 1132(d)(1) (service of process upon trustee or administrator of employee benefit plan shall constitute service upon the plan).

ness be binding in a second case involving the Pension Plan. *See id.* We hold that such a relationship of privity does not exist.

■ Under basic principles of *res judicata* jurisprudence, for a party to be bound by or take advantage of a prior suit that party or its privy must not only have been present in both suits, but it has to appear in the same capacity in both suits. *See* 1B *Moore's Federal Practice* ¶ 0.411[3.–1] (2d ed. 1984); RESTATEMENT (SECOND) OF JUDGMENTS § 36 (1982); 170 A.L.R. 1180. If, for instance, a party appears in the first action as a fiduciary or in some other representative capacity, a second suit in which the same party appears representing his individual interests is not precluded. The rationale, of course, is that the party's individual interests were not asserted or opposed in the prior action. In fact, the party's representational responsibilities might have precluded him as a matter of substantive law from asserting such individual interests in the first action. The RESTATEMENT OF JUDGMENTS states this principle as follows:

> A party appearing in an action in one capacity, individual or representative, is not bound or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.

RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982).

The case law has applied this principle in numerous cases in which a party appears in one suit as a fiduciary or trustee, and in another suit in an individual capacity. *See* 1B *Moore's Federal Practice* ¶ 0.411[4] (2d ed. 1984) (citing numerous cases); 170

A.L.R. 1180, 1187 (collecting cases); *see also id.* at 1181 ("Stated in its broadest outlines, the general rule is that a judgment is conclusive for or against a party only in the capacity in which he litigated the matter. The basic principle requiring identity of parties as a condition of the application of the doctrine of *res judicata* includes a requirement of identity of capacities").[6]

As we have indicated, Alabama law does not require absolute identity of parties; the Pension Plan's claim that it is in privity with Pullman is, thus, not defeated simply because the two are nominally different entities.

> [T]he practical view of parties for purposes of res judicata centers on the interest that is litigated rather than the names that appear in the pleadings, and whether through [an evaluation of the capacities of the parties], or through application of the concept of privity, a person whose interest is put in litigation by one entitled to represent him is bound by the judgment as though he was named as a party. The capacities rule is but the other side of the [privity] coin; where the *names* are the same but the interests put into litigation belong to others, res judicata follows the interest and not the name.

1B *Moore's Federal Practice* ¶ 0.411[3.–2] at 427–28 (2d ed. 1984); *see also Armstrong v. Miller,* 200 N.W.2d 282 (N.D.1972) (recognizing inter-relationship between inquiry into privity and inquiry into representational capacity); 170 A.L.R. 1180, 1181.

---

6. In *Herendeen v. Champion Intern Corp.,* 525 F.2d 130, 133 n. 4 (2d Cir.1975), the Second Circuit, in dicta, found privity between a corporation, its pension plan and certain banks acting as trustees of the pension plan. We respectfully disagree with the Second Circuit's finding of privity in *Herendeen.* The court in a footnote mentioned the facts that the pension plan and its trustees were simply administrative arms of the corporation, that their duties were derived from the corporation, and that the trustees could be replaced by the corporation at any time. However, the fact that the pension plan and its trustees were creatures of the corporation

should not have been determinative. Regardless of which entity or entities carried out the fiduciary duties under the pension plan, the corporation or trustees appointed by it, it is clear that those fiduciary duties were not brought to bear in the first action in *Herendeen* where the corporation appeared as the only defendant and in its individual corporate capacity. In the second suit, the pension plan and its trustees appeared in a fiduciary capacity on behalf of the corporation's employees and, therefore, should not have been allowed to take advantage of a prior judgment in which the employees' interests had not been represented.

In applying the general rule that the preclusive effect of a former judgment does not apply where a party or its privy appears in the second suit in a different capacity, we must ask whether Pullman in the workmen's compensation action was acting in the same representative capacity as is the Pension Plan in the instant case. In the workmen's compensation action, Pullman appeared in its individual corporate capacity to adjudicate a dispute as to benefits due Hurt under the Workmen's Compensation Act. In that case, Pullman's interests were divorced from those of Hurt and Pullman's other employees. Pullman sought to minimize its liability to Hurt under the applicable Alabama statute as, indeed, was its responsibility to its shareholders. In the instant case, however, the Pension Plan (and Pullman, as trustee of the Pension Plan) appears in a different capacity. The Pension Plan is Hurt's fiduciary, and is obligated under ERISA to take such fiduciary relationship into account. While it is true that the Pension Plan is a fiduciary not only for Hurt, but for all other of Pullman's employees, it is also true that the Pension Plan appears in a different capacity than did Pullman in the workmen's compensation action. The Pension Plan must separate itself from the corporate interests of Pullman. It acts not on behalf of Pullman's shareholders, but on behalf of all of Pullman's employees, *i.e.*, the beneficiaries of the Pension Agreement. This is in keeping, of course, with the underlying purpose of ERISA—to set up trust mechanisms which will safeguard pension benefits for employees. *See generally* 29 U.S.C.A. § 1001 (setting out congressional findings and declaration of policy under ERISA); 29 U.S.C.A. § 1103(c)(1) ("The assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan"); 29 U.S.C.A. § 1104(a)(1) (describing and setting out fiduciary duties of pension plan). We need not detail the complicated statutory provisions of ERISA to conclude that an employer acting individually is not in the same capacity for *res judicata* purposes as it is when it acts as trustee under an ERISA pension plan. *See Donovan v. Daugherty*, 550 F.Supp. 390 (S.D.Ala.1982) (where employee benefit plan trustees participated in and received benefits from plans on basis which favored them over employees on whose behalf plans were created, trustees breached their statutory duty to carry out fiduciary responsibility solely in interest of plan participants and beneficiaries).

In finding privity, the district court relied on the fact that the Pension Plan is merely a creature of Pullman. It is true that under the Pension Agreement, Pullman finances the Pension Plan through contributions made to a trust fund which are held by the trustee of the Pension Plan. It is also true that Pullman acts as the administrator and trustee of the Pension Plan and is agent for service of process under the Pension Agreement. Finally, the Pension Agreement provides that "[b]enefits are provided pursuant to an agreement between ... Pullman and the United Steelworkers of America...." *See* Pension Agreement at 2, Appendix to Defendant's Answer, Record at 21. In light of the foregoing facts, the district court found that "there clearly appears to be privity between Pullman and Pullman Plan in this context. For the purposes of the administration of the Pension Agreement, the Pullman Plan is simply a depository for Pullman." *Hurt v. Pullman Standard, Inc.*, 582 F.Supp. at 859. We disagree with this latter conclusion. As we have indicated, the Pension Plan is *not* "simply a depository" for Pullman. The Pension Plan, although funded by Pullman, is not free to use pension funds as Pullman wishes, but rather must administer the funds on behalf of the employees within the confines of ERISA. This fiduciary duty is made clear by the Pension Agreement:

> The plan administrator [i.e., Pullman] has the responsibility to manage the plan and act in the interest of plan participants, and must carry out its duties in accordance with the fiduciary standards of ERISA.

Pension Agreement, *supra,* at 2. The fact that the Pension Plan is, as the district court noted, a creature of Pullman does not indicate that it operates in the same capacity as does Pullman. Rather, the very existence of the Pension Plan is indicative of the ability of Hurt's union, the United Steelworkers of America, to bargain for a separate and distinct ERISA pension plan which would faithfully serve the interests of Pullman's employees.

■ Pullman appeared in its individual corporate capacity in the workmen's compensation action. The Pension Plan, therefore, is not "entitled to the benefits of the rules of res judicata" where it appears in a fiduciary capacity. RESTATEMENT (SECOND) OF JUDGMENTS § 36(2). As the Restatement commentators put it, in explaining the rationale and scope of the capacities rule:

A person, including a corporate entity, may have more than one legal capacity. A legal capacity other than one's individual capacity is by definition representative of interests of others. The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions. A person appearing on behalf of another is required to act with complete fidelity to the interests of the beneficiary, uninfluenced by consideration of his own interest or advantage. By the same token, in appearing as a representative of another, a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf. . . .

RESTATEMENT (SECOND) OF JUDGMENTS § 36, comment a.

Therefore, we conclude that Pullman and the Pension Plan are not in privity with one another, and that the Pension Plan cannot assert the prior workmen's compensation judgment as a bar to Hurt's claims in the instant case.[7]

**B. *Collateral Estoppel***

[8] The Pension Plan argues, and the district court found, that Hurt's claims are also barred by the doctrine of collateral estoppel because an issue actually litigated in the workmen's compensation action is purportedly dispositive of Hurt's ERISA claim and the pendent state claims. "With the abandonment of the mutuality requirement in most jurisdictions, the determination of an issue against a person party to an action after full and fair opportunity to litigate can be asserted as conclusive in a subsequent action by or against the same party even if the person asserting the estoppel was a stranger to the first suit." *See* 1B *Moore's Federal Practice* ¶ 0.411 [3.–1] at 415–16 (2d ed. 1984). Therefore, if Alabama had abandoned the mutuality requirement, thus permitting the Pension Plan, even though it was not a party to the first action, to assert defensively an issue already decided against Hurt in that action, we could then proceed to decide whether the instant case met the other requirements of the collateral estoppel doctrine. *See Wheeler v. First Alabama Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala. 1978). However, the Alabama Supreme Court has very recently declined to abandon its mutuality requirement. *See Fisher v. Space of Pensacola, Inc.,* 461 So.2d 790,

---

**7.** The district court found alternatively that Hurt's ERISA claim and pendent state claims were barred because they were compulsory counterclaims in the workmen's compensation action under Ala.R.Civ.P. 13(a), which states:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any *opposing party,* if it arises out of the transaction or occurrence that is the subject matter of the *opposing party's* claim. . . .

(Emphasis added). It is clear that the Pension Plan was not an "opposing party" in the work-

men's compensation action and, therefore, Hurt was not required under the literal terms of Rule 13(a) to assert his claims against the Pension Plan in the state court action. We need not decide whether the term "opposing party" includes parties in privity to the literal opposing party. Assuming, however, that Rule 13(a) does intend to bind parties in privity, it provides no basis for preclusion in the instant case because, as indicated in the text, *supra,* Pullman and the Pension Plan are not in privity with one another.

792 (Ala.1984); *Little v. Pizza Wagon, Inc.,* 432 So.2d 1269, 1274 (Ala.1983) (Jones, J., concurring specially) (lamenting Alabama's strict adherence to the mutuality rule). Since we are bound by Alabama law, *see supra* note 4, and because Alabama has refused to abandon the mutuality requirement, collateral estoppel may only be asserted in this case if the Pension Plan is considered the same party as Pullman, *i.e.,* is in privity with Pullman. As indicated in Part II.A., *supra,* Pullman and the Pension Plan are not in privity with one another. *See* 1B *Moore's Federal Practice* ¶ 0.411[3.–1] at 415 (2d ed. 1984) ("When mutuality of estoppel is required, it follows that the representative similarly cannot assert a judgment in his favor to estop his adversary from litigating all issues afresh in a subsequent action between them in which he appears in a different capacity"). Therefore, collateral estoppel may not be asserted to bar Hurt's claims in the instant case.

### III. CONCLUSION

We affirm the district court's dismissal on independent grounds of Hurt's pendent claim of bad faith under Alabama law.

Because Pullman and the Pension Plan are not in privity with one another, the doctrines of *res judicata* and collateral estoppel may not be asserted to foreclose Hurt's ERISA claim and pendent state law claims in the instant case.

Thus, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.