### LEASING SERVICE CORPORATION, Plaintiff,

v.

### HOBBS EQUIPMENT COMPANY, Defendant and Third Party Plaintiff,

v.

### COLONIAL BANK OF NORTH ALABAMA, formerly Bank of Moulton; and River City Construction Company, Inc.*, Third Party Defendants.

### LEASING SERVICE CORPORATION, Third Party Plaintiff,

v.

### COLONIAL BANK OF NORTH ALABAMA, formerly Bank of Moulton, Third Party Defendant.

CV No. 85–HM–5471–NE.

United States District Court, N.D. Alabama, Northeastern Division.

Feb. 6, 1989.

[* dismissed because of bankruptcy.]

Michael L. Hall, Latrick M. Lavette, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for plaintiff.

Thomas A. Caddell, Caddell, Shanks, Harris, Moores & Murphree, Decatur, Ala., for Hobbs.

William E. Shinn, Jr., Harris, Shinn, Phillips & Perry, Decatur, Ala., for Colonial Bank.

Welborn Dent, President of River 102 Longhorn Pass, Hartselle, Ala., for River City Const.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

By Order of this Court entered on September 30, 1987 summary judgment was denied to each movant for summary judgment in the above entitled civil action, the Court finding and determining that each movant had failed to show that no genuine issue of material fact existed and that movant was entitled to judgment as a matter of law. As noted in said Order, these rulings merely preserved the status quo in the case. See *T.B. Scottdale Contractors, Inc. v. United States*, 815 F.2d 1425, 1428 (11th Cir.1987). Upon reconsideration, the Court sua sponte vacates its September 30, 1987 Order denying summary judgment and in conformity with directive of the Eleventh Circuit Court of Appeals now enters this Memorandum of Decision stating its reasons for the summary judgment rulings now made and entered in this case.

## [STATEMENT OF THE CASE]

Plaintiff Leasing Service Corporation ("LSC"), a corporation organized and existing under the laws of a state other than the State of Tennessee and having its principal place of business in the State of New York, brought this diversity of citizenship civil action on July 5, 1985 against defendant Hobbs Equipment Company ("Hobbs"), a corporation organized and existing under the laws of the State of Tennessee and having its principal place of business in that state. The complaint alleged that the matter in controversy exceeded, exclusive of interest and costs, the sum of $10,-000.00. The complaint further alleged that in September 1983 the defendant Hobbs purchased a Lorain Model MC 775 Crane ("Lorain Crane"), with serial number identified, from River City Construction Company, Inc. ("River City") for the sum of $75,-000.00 and subsequently sold it to a third party for the sum of $80,000.00. Plaintiff LSC then alleged that the Lorain Crane in question was at all relevant times subject to a first priority perfected security interest therein owned and held by LSC pursuant to Alabama UCC law and that defendant and Hobbs' purchase and sale of such equipment item was in derogation of and in defiance to LSC's superior security rights thereto. LSC's complaint next alleges that despite written notice by LSC to Hobbs via certified United States mail that LSC owned and held a perfected first priority security interest in and to the Lorain Crane and written demand for immediate payment by Hobbs to LSC of the $80,000.00 purchase price above referenced, no such payment had been tendered. The complaint finally alleges that Hobbs' actions constituted a conversion of LSC's personal property. The complaint demands judgment against defendant Hobbs in the amount of $80,000.00 and costs.[1]

Hobbs filed its Answer to LSC's complaint on August 14, 1985 admitting its purchase of the Lorain Crane from River City and its sale thereof to a third party for $82,000.00 after performing certain maintenance and repair work thereon. Hobbs alleged that at the time of its purchase from River City it [Hobbs] wired the $75,-000.00 purchase price to Colonial Bank of North Alabama (the "Bank"), formerly Bank of Moulton, which claimed a security interest therein, authorized the sale of such equipment to Hobbs and in fact furnished it with a Certificate of Title. Admitting that the Bank's retention of such sales proceeds was a defiance of LSC's rights, Hobbs alleged that its conduct in purchasing the Lorain Crane and subsequently selling it to a third party in the State of

---

1. While LSC's complaint fails to show Alabama's nexus with the controversy therein described, the summary judgment record shows without dispute that River City is an Alabama corporation having its principal offices and place of business in Decatur, Alabama where the Lorain Crane in question was located at the time of Hobbs' purchase of this equipment from River City. As a matter of fact the Lorain Crane had been principally located in Decatur since River City purchased it from Hobbs in 1975.

Tennessee where LSC had never perfected its security interest in and to such equipment item constituted no actionable wrong on its part. Defendant Hobbs also asserted by way of special defense that LSC had omitted to make a necessary party a defendant in this action, alleging that the Bank was a corporate citizen of the State of Alabama subject to the jurisdiction of the court which could be made a party without depriving the Court of jurisdiction over the subject matter of this action and was a party needed for just adjudication of the controversy.

On August 23, 1985 the defendant Hobbs filed its third-party complaint in this case against the Bank and River City, as third-party defendants, alleging that the Bank misapplied the sales proceeds it received via Hobbs from River City's sale of the Lorain Crane to Hobbs by failing to pay such proceeds to the first lien holder, LSC, pursuant to Alabama's UCC Code. Jurisdiction is based upon diversity of citizenship and the amount in controversy. Hobbs' third-party complaint further alleges that River City and the Bank either negligently or intentionally misrepresented to Hobbs that it would have and receive a good and merchantable title to the Lorain Crane upon payment of the purchase proceeds to the Bank for application of the indebtedness owed it by River City. The third-party complaint next alleges that Hobbs relied upon such representation and delivered such proceeds to the Bank to its damage and detriment. Hobbs' third-party complaint against the Bank and River City further alleges that River City specifically warranted title to the Lorain Crane, that the Bank was privy to such warranty by obtaining execution by River City of the bill of sale at the Bank's office and by handling the application of the sales proceeds from Hobbs which it (Bank) applied as a payment by River City on its indebtedness to the Bank. Finally, the third-party complaint against the Bank and River City alleges that both the Bank and River City have wrongfully refused the demands of the third-party plaintiff for the Bank and River City to defend Hobbs in this litigation, thus causing it to incur legal fees and expenses in this case. The Hobbs' third-party complaint against the Bank and River City, as third-party defendants, demands judgment against the Bank and River City for all sums that may be herein adjudged against Hobbs in favor of LSC.

Third-party defendant Bank filed its ten-page Answer to Hobbs' third-party complaint on September 19, 1985. Stripped of its redundancy, the Bank's answer asserts the contributory negligence of Hobbs to Hobbs' third-party complaint charge of negligence against the Bank and River City, proximately contributing to the injury or loss complained of by Hobbs; the defense of no privity of contract between the third-party plaintiff and the Bank; that the Bank's constructive knowledge of LSC's lien priority was equally available to Hobbs; lack of standing; that the asserted claims for relief of the third-party plaintiff [Hobbs] are essentially claims for indemnity or contribution by one joint tort-feasor against other joint tort-feasors; one-year statute of limitations; that the lien claimed by LSC is either void or unenforceable or unperfected at all times material to the litigation; defense of res judicata; not qualified to transact business in the State of Alabama defense [relates to LSC's assignor failing to qualify]; fraud in the factum [attempting to raise in its own defense the alleged fraud practiced by LSC's assignor upon River City at or immediately prior to the time of the execution of the documents by LSC's assignor and River City which give rise to LSC's security interest as assignee]; other fraud allegedly committed by LSC in the preparation of the documents executed by River City and LSC's assignor; unconscionability [taking of security interest in River City's equipment by LSC and its assignor]; LSC's alleged failure to perfect its security interest; additional failure to perfect defense; and, failure to maintain perfection defense.

Under date of January 21, 1986, defendant Hobbs amended its Answer to LSC's complaint by adding to its defense to plaintiff's conversion claim for relief against Hobbs the defense that LSC's assignor was not qualified to transact business in the State of Alabama at the time of the execution of the documents between LSC's assignor and River City which give rise to LSC's claim, as assignee, of perfected first priority security interest in and to all of River City's equipment and by further adding an additional defense to LSC's complaint premised upon LSC's alleged failure to timely perfect its security interest in the Lorain Crane after such item of equipment was sold by River City to Hobbs which transported the Crane in question to the State of Tennessee for delivery to Hobbs' purchaser.

At the same time above referenced Hobbs, as third-party plaintiff, amended its third-party complaint against the Bank, as third-party defendant by adding thereto Count Two which alleges that if plaintiff LSC under its complaint against Hobbs is legally entitled to recover of Hobbs for conversion of the security in question then the third-party defendant Bank is indebted to Hobbs, as third-party plaintiff, for money had and received by the Bank in that Hobbs paid the money to the Bank on the mistaken supposition of fact that the Bank was entitled to the proceeds of sale as the owner and holder of a perfected first priority security interest in and to the Lorain Crane which Hobbs purchased from River City. The demand for relief in Count Two is that Hobbs demands judgment against the Bank for all sums that may be adjudged against Hobbs in favor of LSC on account of the transaction in question.

Plaintiff LSC filed its third-party complaint in the above entitled civil action against the Bank, as third-party defendant, on January 30, 1986. Jurisdiction is predicated upon diversity of citizenship and the amount in controversy. *Count One* of this third-party complaint alleges a conversion claim for relief by LSC against the Bank based upon the sale by River City to Hobbs of the Lorain Crane, LSC's perfected first priority security interest therein at the time of such sale, the payment by Hobbs to the Bank at River City's direction of the $75,-000.00 purchase price it agreed to pay River City for such equipment item, the attachment of LSC's referenced security interest to the sale proceeds received by the Bank and LSC's entitlement to such proceeds from the Bank in amount of $75,-000.00, together with interest. *Count Two* of LSC's third-party complaint against the Bank, as third-party defendant, is a claim for relief for declaratory judgment seeking a court declaration that LSC's perfected security interest in and to all of River City's equipment is superior to the perfected security interest of the third-party defendant [the Bank]. By amendment to its third-party complaint against the Bank, as third-party defendant, LSC on February 20, 1986 added Count Three thereto asserting that at all times relevant it was the owner and holder of a perfected first priority security interest in and to a Hobart 2300 Welder owned by River City, that the Bank also asserts a prior security interest in and to such Welder, that on February 7, 1983 River City sold the Welder to Decatur Erectors and paid the sales proceeds therefrom to the Bank, that LSC, as the owner and holder of a perfected first priority security interest in the Welder at the time of the referenced sale and at the time of the payment of such sales proceeds to the Bank by River City, is entitled to recover the proceeds of the Welder from the Bank. Count Three prays for entry of declaratory judgment that LSC's perfected security interest in and to the Welder and its proceeds is superior to the security interest of the Bank. LSC further prays for a judgment in its favor against the Bank in amount of $10,000.00, plus interest and costs.

The Bank's four-page Answer to LSC's original third-party complaint was filed herein on February 20, 1986 in which it admits that it had a perfected security interest in the Lorain Crane *after* July 11, 1980 and *prior* to September of 1983. It thereupon admits that if LSC had a valid security interest in the Crane at the time of

its sale by River City to Hobbs and if the same was duly perfected under applicable law, the Bank's security interest therein was subordinate to LSC's security interest therein just prior to the removal of the Crane from Alabama. However, asserts the Bank, the security interest of both the Bank and LSC in and to the Crane became unperfected after the removal of the Crane from Alabama. The Bank in its Answer next adopts and refiles as defenses to LSC's third-party complaint the same defenses which it asserted in its Answer to the third-party complaint of Hobbs. In addition the Bank asserts the following defenses: LSC's assignor's failure to obtain corporate permit to do business in Alabama; modification of contract; and a failure of LSC to perfect its security interest in the Lorain Crane by failing to cause entry of such security interest on the River City Tennessee Certificate of Title covering such Crane when it was purchased by River City on or about May 22, 1975 as required by Tennessee law. And on March 11, 1986 the Bank, as third-party defendant, filed Answer to Count Three of LSC's third-party complaint alleging that it had a security interest in the Hobart Welder continuously from February 1977 until the Welder was sold by River City. The Bank admits in such Answer that from February 17, 1982 through February 6, 1983 its security interest in and to such Welder was not perfected.

## [SUMMARY JUDGMENT MOTIONS]

The above entitled civil action is now before the Court upon the following submitted motions for summary judgment:

■ Motion of plaintiff Leasing Service Corporation ("LSC") for summary judgment in its favor against defendant Hobbs Equipment Company ("Hobbs") with respect to plaintiff LSC's conversion claim for relief stated in its complaint against defendant Hobbs, both on the issue of defendant Hobbs' liability to plaintiff LSC thereunder and on the issue of damages to which plaintiff LSC is entitled to have and recover of defendant Hobbs thereunder.

■ Motion of LSC, as third-party plaintiff, for summary judgment in its favor against third-party defendant Colonial Bank of North Alabama ("Bank") with respect to: [i] Count One of LSC's third-party complaint, as amended, against the Bank, as third-party defendant, for conversion by the Bank of the $75,000.00 proceeds it received from Hobbs Equipment Company ("Hobbs") on September 26, 1983 from the September 26, 1983 sale of the Lorain Model 785 Crane by River City Construction Company, Inc. ("River City") to Hobbs, both on the issue of the Bank's liability to LSC for its receipt of and ownership dominion over such funds and on the issue of damages to which LSC is entitled to have and recover of the Bank under Count One; [ii] Count Two of LSC's third-party complaint, as amended, against the Bank, as third-party defendant, for declaratory judgment that LSC's perfected security interest in and to certain River City equipment described with particularity in Exhibit "A" to LSC's third-party complaint against the Bank is and was at all times relevant superior to the perfected security interest of the Bank in and to such River City equipment and that LSC is entitled to the immediate possession thereof in its capacity as the party with the superior perfected interest therein and/or to the immediate possession and ownership of all proceeds received from the sale of any such equipment by the mutual consent of LSC and the Bank, together with all interest accrued thereon; and [iii] Count Three of LSC's third-party complaint, as amended, against the Bank, as third-party defendant, for declaratory judgment (and ancillary monetary relief) that LSC's perfected security interest in and to that certain Hobart 2300 Welder owned by River City [which was sold by River City on February 7, 1983 to Decatur Erectors for $10,000.00 cash with sales proceeds simultaneously paid by River City to the Bank] is and was at all relevant times superior to the security interest of the Bank in and to such equipment item, both on the issue of the Bank's liability to LSC for its receipt of and ownership dominion over such funds and on the issue of dam-

ages to which LSC is entitled to have and recover of the Bank under Count Three.

■ Motion of defendant Hobbs Equipment Company ("Hobbs") for summary judgment in its favor and in favor of the third-party defendant Colonial Bank of North Alabama ("Bank") with respect to all claims for relief asserted by plaintiff Leasing Service Corporation ("LSC") in plaintiff's complaint in the above entitled civil action (or as last amended); and

■ Motion of third-party defendant Colonial Bank of North Alabama ("Bank") for summary judgment in its favor and in favor of defendant Hobbs Equipment Company ("Hobbs") with respect to all claims for relief asserted by plaintiff LSC in its complaint [or as last amended] in the above entitled civil action.

In addition, it is the Court's understanding that third-party plaintiff Hobbs Equipment Company ("Hobbs") and third-party defendant Colonial Bank of North Alabama ("Bank") have stipulated and agreed for the Court to now adjudicate the issues presented herein by the third-party complaint of Hobbs against the Bank, as third-party defendant, for restitution in event the Court adjudges that plaintiff LSC is entitled under its complaint against the defendant Hobbs to have and recover of Hobbs for its conversion of LSC's perfected first priority security interest in and to that certain Lorain Model MC 775 Crane owned by River City Construction Company, Inc. ("River City") by Hobbs' purchase of such equipment item from River City at and for a cash purchase price of $75,000.00, by simultaneously paying such $75,000.00 purchase price directly to Colonial Bank of North Alabama ("Bank") at River City's direction to be applied on indebtedness owed by River City to the Bank and by thereupon selling such Crane to a third party in the State of Tennessee for $82,-000.00, see infra, pp. 3–4. The Court treats such stipulation and agreement as if cross-

motions for summary judgment on both the issue of liability and the issue of damages were timely filed herein by third-party plaintiff Hobbs and by third-party defendant Bank and thereupon duly taken under submission by the Court after due Rule 56, Fed.R.Civ.P., notice to such parties and reasonable opportunity to present all material made pertinent to such cross motions by Rule 56.

### [RELEVANT FACTS]

Prior to the time of the transaction which is the genesis of this lawsuit and in 1979 Chatham Machinery, Inc. ["Chatham"], a Georgia corporation with its principal place of business in Forrest Park, Georgia, leased a P & H Model 790 truck crane and a P & H Omega rough terrain crane to River City Construction Company, Inc.,[2] an Alabama corporation having its principal place of business in Decatur, Alabama. In April, 1980 Chatham began negotiating with River City to refinance and restructure the lease agreement with respect to the two cranes above referenced. Welborn Dent, president of River City, executed the restructured equipment lease agreement on behalf of River City at the Huntsville, Alabama Jetport on July 8, 1980. This lease was on the same day executed on behalf of Chatham by Wade H. Griffin, III, its Vice President, in Forrest Park. And on that same day Chatham assigned the lease to LSC in Forrest Park, Georgia. The referenced lease included the following provision at the bottom of the first page:

> In any jurisdiction where the Uniform Commercial Code is in effect, Lessee [River City] grants to Lessor [Leasing Service] a security interest in the Equipment and any and all inventory, goods, equipment, machinery, fixtures and assets of any and every kind, wherever located, now or hereafter belonging to Lessee....

---

**2.** Although named as a defendant in the above entitled civil action, River City Construction Company, Inc. was dismissed from this litigation by reason of its filing of a petition in bankruptcy court on November 20, 1985. The automatic stay imposed by Section 362 of the Bankruptcy Code was lifted by order of the Bankruptcy Court to the extent Hobbs could proceed herein against the Bank; however, it was specifically denied the right to seek or recover monetary judgment against River City.

The lease also contained the following provisions:

> Lessee further acknowledges notice of the intended assignment of this lease to [Leasing Service] and upon such assignment, Lessee agrees not to assert against the Lessor and any subsequent Assignee any defense, setoff, recoupment, claim or counterclaim which Lessee may have against the original lessor....
>
> \* \* \* \* \* \*
>
> Any security interest granted herein shall attach to any proceeds.

On July 11, 1980, LSC filed a UCC–1 financing statement with the Secretary of State of Alabama showing River City as debtor, Chatham as secured party, and LSC as assignee of the secured party. LSC filed a continuation statement covering this file on May 27, 1985. The financing statement consisted of a UCC–1 form with the Lease being filed as an attachment. The UCC–1 form provided that it covered all of the following property:

> All machinery, inventory, equipment and goods as described in the attached entire agreement or any schedule prepared in connection therewith. This UCC form together with the attached security agreement and/or schedule are being submitted for filing herewith as a financing statement.

Apparently one year later, River City defaulted in making payments as required by the equipment lease agreement. *The two cranes previously described, which were specifically identified in the lease agreement previously referenced, were repossessed and sold by LSC.* Now they can be forgotten. A deficiency resulted after such sale and LSC sued River City to collect such deficiency in the United States District Court for the Northern District of Alabama (CV 82–P–0056–S). The District Court litigation resulted in a judgment in favor of LSC and against River City in the amount of $304,185.30. The District Court's determination was upheld by the United States Court of Appeals for the Eleventh Circuit with the exception of damages which were reduced by $40,000.00. *Leasing Service Corporation v. River City Construction, Inc.*, 743 F.2d 871 (11th Cir.1984) (hereinafter referred to as "the previous case").[3] Defenses raised in the previous case include fraud, unconscionability and fraud in the factum. The parties have stipulated in the Pretrial Order entered herein on June 17, 1986 that LSC's judgment against River City above referenced remains outstanding and completely unpaid [¶ 5(a)8, Pretrial Order].

For many years prior to the commencement of this litigation River City had borrowed money from the Bank of Moulton which later merged with and into and is presently a part of Colonial Bank of North Alabama ("Bank"). In May of 1975 River City purchased a Lorain Crane Model MC 785 from Hobbs Equipment Company, a corporate equipment dealer located in Nashville, Tennessee. River City financed this purchase through a loan from the Bank in the amount of $105,000 and granted the Bank a security interest in the Lorain Crane by a security agreement dated May 23, 1975. The Bank prepared and filed with the Secretary of State of Alabama an UCC–1 financing statement covering such Crane.

River City continued to borrow money from time to time from the Bank and was never completely out of debt to such lending institution. River City's loan was refinanced from time to time by the Bank and new money was advanced. In February of 1977 the Bank made an additional advance to River City and took an additional security agreement covering the Lorain Crane. It also filed an additional UCC–1 financing statement with the Office of the Secretary of State of Alabama, covering among other things two additional cranes and "all other construction equipment ..., whether now

**3.** On September 26, 1983, LSC recorded a Certificate of Judgment in the Probate Court of Morgan County, which Certificate of Judgment reflected the judgment rendered in the previous case by the district court. On March 7, 1985, LSC recorded a second Certificate of Judgment in the Probate Court of Morgan County, which Certificate of Judgment reflected the judgment in the previous case as reduced by the Court of Appeals.

owned or hereafter acquired." *Neither the 1975 nor 1977 financing statements filed by the Bank were timely continued.* The effectiveness of the 1977 financing statement expired in 1982. In *1983* the Bank made River City an additional loan at which time it once again filed a financing statement with the Secretary of State covering all of River City's equipment—including the Lorain Crane. *Prior to this filing on February 7, 1983 the Bank's security interest in the Crane and other River City equipment was unperfected. During this lapse in perfection on the part of the Bank, LSC's financing statement with respect to Chatham's above referenced transaction with River City and LSC's status as assignee of Chatham as the secured party was filed on July 11, 1980 and serves as the basis for its claim in this litigation that it is entitled to UCC priority as the first secured party with respect to all River City equipment.*

Prior to the filing of its February 7, 1983 UCC financing statement the Bank requested the Secretary of State of Alabama to perform a lien search of all financing statements showing River City as debtor. On February 2, 1983 the lien search was performed and prior to February 7, 1983 a copy of the search indicating LSC's above referenced security interest was in possession of Bank.

As a result of the UCC filings above referenced, both the Bank and LSC claim a perfected security interest in the Lorain Crane and the other equipment owned by River City. The paramount issue is which security interest is entitled to priority.

On September 26, 1983 Hobbs purchased the Lorain Crane from River City for $75,000.00. Prior to the Hobbs purchase it had contracted to sell the Lorain Crane to Bell Construction Company ("Bell") for $82,000.00. When Hobbs purchased the Crane from River City it was located in Decatur, Alabama. From this location Bell took possession of it as purchaser from Hobbs.

By agreement between River City, Hobbs and the Bank, Hobbs had no right to possession of the Crane until the Bank notified River City that it had received the $75,000.00 from Hobbs. In order to complete the purchase of the Crane Hobbs at the direction of River City wired $75,000.00 to the Bank on September 26, 1983. The Bank received these funds on that date. Moreover, when the Bank received the funds from Hobbs it knew all of the essential details of the transaction. Subsequently and on May 31, 1985 LSC demanded Hobbs tender to it the proceeds of its sale of the Lorain Crane to Bell. Hobbs refused to comply with such demand.

In addition to the Lorain Crane and other equipment both LSC and the Bank claim a perfected security interest in a Hobart 2300 Welder (the "Welder") formerly owned by River City. On May 17, 1985 River City sold the Welder to a third party for $10,000.00 and subsequently paid the entire proceeds to the Bank. At the time the Bank received the proceeds from River City it was aware that such funds represented the proceeds of River City's sale of this described item of equipment.

LSC claims priority due to its perfected first priority security interest in and to all of River City's equipment, including the Hobart Welder and Crane by virtue of its July 11, 1980 filing with the Secretary of State of Alabama. The Bank perfected its security interest in and to River City's equipment including the Hobart Welder and Crane as a result of its financing statement filed with the Secretary of State on February 7, 1983. At the time of this LSC filing the Bank's security interest in the River City equipment was admittedly unperfected.

Shortly after this lawsuit was commenced, River City filed a bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Alabama (BK 85–5827). The bankruptcy court awarded both LSC and the Bank relief from the automatic stay imposed by 11 U.S.C. § 362 in order that both parties would be free to pursue their respective security rights in this Court in and to the Lorain Crane, the Hobart Welder and in and to the other River City equipment and/or in and to the proceeds of sale thereof.

In this action LSC asserts that its perfected security interest has priority over the Bank's perfected security interest in both the Lorain Crane and other River City equipment (including the Welder). LSC contends that the sale of the Crane and the Welder was a conversion of its security interest therein and accordingly LSC also seeks to recover the proceeds of the sale of such items from Hobbs (by complaint) and from the Bank (by third party complaint). LSC further seeks a declaratory judgment determining which party [it or the Bank] has the first priority security interest in and to certain other River City equipment described with particularity in Exhibit "A" to LSC's third-party complaint against the Bank. Hobbs in turn seeks restitution in this action from the Bank in event it is adjudged liable to LSC.

If LSC's financing statement is valid, it is superior to the security interest claimed by the Bank due to the Bank's lapse in perfection. Accordingly, both Hobbs and the Bank attack the validity of the security agreement under which LSC claims its superior lien. The Bank (and Hobbs) essentially assert two positions:

(1) The security interest which is the basis of LSC's claim is void because LSC's assignor, Chatham, was not qualified to do business in Alabama pursuant to state law at the time of the execution of the security agreement. *Ala.Code* § 10–2–254 (1975). LSC counters asserting that several exceptions apply to this failure to qualify defense. These include: (a) insufficient evidence has been presented to show that the Chatham–River City contract is subject to such defense; (b) the Chatham–River City contract was one involving interstate commerce making such defense inapplicable; (c) LSC is seeking to enforce property rights which are not affected by the qualification defense; (d) such defense is barred by the doctrine of *res judicata;* (e) the doctrine of *de facto* qualification applies in this case.

(2) Assuming the validity of the security agreement, Hobbs and the Bank contend that the LSC security interest was not properly perfected because the UCC–1 financing statement of LSC and attached equipment lease agreement were (a) seriously misleading and/or provided insufficient notice; (b) were obtained by fraud; or (c) were unconscionable.

## Standard of Review

In ruling on motions for summary judgment this Court must consider all evidence in light most favorable to the non-moving party. *Rollins v. TechSouth*, 833 F.2d 1525, 1528 (11th Cir.1987). But as the Supreme Court noted, this does not lessen the burden of the non-moving party in any way. The non-moving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, a court ruling on a summary judgment motion must evaluate the evidence in light of the proper standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). See also *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court must follow the Supreme Court's mandate that this standard requires summary judgment "against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. 317, 106 S.Ct. 2548.

## Failure to Qualify

For several months prior to the execution of the July 8, 1980 equipment lease agreement between Chatham and River City (which contains the blanket security interest on which LSC's claim is based) Chat-

ham operated an office in Alabama which was staffed by three Alabama residents. However, it was not until July 21, 1980 that the Secretary of State determined that Chatham had done everything necessary to qualify to do business in the State of Alabama and accordingly issued Chatham a permit.[4]

The majority of the negotiations involving the equipment lease were conducted between Welborn Dent (President of River City) and personnel of Chatham (LSC's assignor) based in Georgia. However, Hobbs and the Bank assert that because Chatham was not qualified to do business in Alabama at the time of the execution of the lease agreement the contract is void pursuant to Alabama law and therefore LSC, as Chatham's assignee, cannot enforce its security agreement.

At the time of the execution of the Chatham–River City equipment lease agreement, *Ala. Code* § 10–2–250 (1975), provided in pertinent part:

> (a) Every foreign corporation shall, before engaging in or transacting any business in this state, file with the Secretary of State a certified copy of its articles of incorporation or association, together with such other information as may be required by the Secretary of State, file an instrument of writing under the seal of the corporation and signed officially by the chairman of the board, president or executive vice president and the treasurer or secretary, or the officer holding the authority and exercising the duties of secretary, thereof, designating at least one known place of business in this state and an authorized agent or agents residing thereat, pay all fees and taxes and make all tax returns required by law. . . .

*Ala. Code* § 10–2–254 (1975), in effect at the time of the execution of such equipment lease agreement provided in pertinent part:

> All contracts or agreements made or entered into in this state by foreign corpo-

rations which have not qualified to do business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement. . . . [5]

These code sections along with *Ala. Code* § 40–14–4 (1975) and § 232 of the Alabama Constitution prevent a non-qualified foreign corporation from enforcing its contracts in the courts of Alabama. However, "the qualification statute is penal in nature and in derogation of the common law; therefore it should be strictly construed." *Hughes Associates, Inc. v. Printed Circuit Corp.*, 631 F.Supp. 851, 858 (N.D.Ala.1986), citing *Aim Leasing Corp. v. Helicopter Medical Evaluation, Inc.*, 687 F.2d 354 (11th Cir.1982). This strict construction does not alter the basic rule that when a non-qualified foreign corporation does business in Alabama that it (nor its assignees) can enforce the contract in Alabama courts. However, as argued by LSC, there exist several exceptions to this failure to qualify defense.

■ A foreign corporation engaged in *interstate* commerce is not subject to the defense of non-qualification. In the instant case LSC asserts that Chatham's dealings with River City were interstate in nature. Substantially all negotiations regarding the lease of the two cranes (not the subject of this suit) were conducted between Welborn Dent (president of River City) and personnel of Chatham based in Georgia. In 1979 at least one of the two cranes were delivered to River City in Georgia—*prior* to the opening of Chatham's Alabama offices. The fact that Chatham later had employees in Alabama does not destroy the interstate character of this transaction. Chatham was in the business of leasing and servicing cranes throughout the southeast. Its execution of the lease agreement here under attack occurred in Forrest Park, Georgia. Its contacts with River City in Ala-

---

**4.** By April 30, 1980, the Office of the Secretary of State and the Department of Revenue determined that Chatham had done everything necessary to qualify to do business in Alabama except that Chatham had failed to pay its franchise tax.

**5.** Current Alabama Code § 10–2A–247 parallels former Alabama Code sections 10–2–250 and 10–2–254.

bama were not sufficient to characterize the lease as an intrastate transaction. Cf. *SAR Manufacturing v. Dumas Bros. Mfg. Co., Inc.*, 526 F.2d 1283 (5th Cir.1976).

The Court is of the opinion and holds that the renegotiation of the financial arrangements between Chatham and River City does not constitute intrastate commerce but is merely incidental to the basic interstate transaction—the leasing of the cranes. It was not a separate undertaking by Chatham but merely a continuation of the interstate agreement previously entered into between the parties. Therefore, the lease agreement on which LSC claims as assignee of Chatham is not void. *See In re Delta Molded Products, Inc.*, 416 F.Supp. 938 (N.D.Ala.1976), *aff'd* 571 F.2d 957 (5th Cir.1978); *Kentucky Galvanizing Co., Inc. v. Continental Casualty Co., Inc.*, 335 So.2d 649 (Ala.1976).

The party who asserts the non-qualification defense has the burden of proof on the issue. *Kyle v. Central National Bank*, 226 Ala. 257, 146 So. 801 (1933). Hobbs and the Bank have both failed to meet this burden.

■ In the alternative, the Court holds there is yet another exception to the defense of non-qualification which LSC may and does assert. Under the property rights exception, even if a contract is unenforceable by virtue of a foreign corporation's non-qualification, the defense does not prohibit the exercise of proprietary interest in property.

In *Calvert Iron Works v. Algernon Blair, Inc.*, 284 Ala. 655, 227 So.2d 424 (1969), a non-qualified foreign corporation contracted to perform construction work and provide materials in connection with a construction project. Upon being refused payment, the corporation brought suit for breach of contract. The Alabama Supreme Court refused to allow the non-qualified corporation to enforce the contract, stating:

It has been held that when a contract has been fully executed by the parties, resulting property rights are enforceable in the courts of this state by possessory action, not withstanding the original invalidity of the contract by reason of the plaintiff's non-compliance with the statutes of the State of Alabama. *Capital Lumber v. Mullinax*, 208 Ala. 266, 94 So. 88 [1922]. However, the plaintiff in this case is not seeking to enforce a property right by possessory action. *Calvert*, 227 So.2d at 426.

In *Jones v. Americar, Inc.*, 283 Ala. 638, 219 So.2d 893 (1969), Americar, Inc., a Florida corporation, entered into a franchise contract with Jones wherein Jones was granted the right to operate automobile rent-a-car agencies in the State of Alabama, excepting Madison County, using the trade name "Americar". Americar leased to Jones various automobiles (twenty-nine in number) for his use in the rental business. A dispute thereafter developed between the parties. Jones cancelled the contract. Americar demanded the return of its automobiles. They were not returned. Americar brought an action for the conversion by Jones of the twenty-nine automobiles (Count One). Four other claims for relief, including breach of contract, were asserted by Americar. Jones asserted the defense of Americar's non-qualification to do business in the State of Alabama. The trial court sustained Americar's demurrer to such plea. The jury returned verdict in favor of Americar and awarded monetary damages. On appeal to the Alabama Supreme Court, Americar argued that because it was maintaining an action to recover *possession* of property which would not require enforcement of the contract its non-qualification was immaterial. The court agreed, holding that Americar could maintain its suit despite its non-qualification. The court stated "[w]e think that which is prohibited in the Alabama statutes are suits *on contracts* by unqualified corporations." *Jones*, 283 Ala. at 643, 219 So.2d 893. The square holding of this Alabama case is that a non-qualifying corporation may maintain an action for the conversion of its property. 283 Ala. at 643, 219 So.2d 893.

Perhaps the best explanation of the property rights exception to the non-qualification defense was given in *In re Delta Molded Products, Inc.*, 416 F.Supp. 938

**1288**

(N.D.Ala.1976), *aff'd* 571 F.2d 957 (1978). In *Delta Molded* a non-qualified corporation was seeking to reclaim certain molding machines and auxiliary equipment pursuant to a perfected security agreement.

The court surveyed the applicable Alabama law and held that *although the security agreement was unenforceable due to the corporation's failure to qualify, the property rights which arose from the security interest were enforceable,* the suit being "substantially similar to an action in conversion." *Delta Molded,* 416 F.Supp. at 945–46. In reaching its decision the court quoted *Capital Lumber Co. v. Mullinix,* 208 Ala. 266, 268, 94 So. 88 (1922):

> The rule is well and soundly established that, when a contract has been fully executed by the parties, resulting property rights are enforceable in the courts by possessory actions notwithstanding the original invalidity of the contract by reason of the plaintiff corporation's non-compliance with the statutory requirements. (Citations omitted)
>
> \*     \*     \*     \*     \*     \*
>
> This action is in no sense an attempt to enforce any provision or provisions of an executory contract, but merely to enforce possessory rights which have been created and which now exist by the voluntary acts of the parties; and now having fully performed his own obligations and accepted performance also on the part of the plaintiff, it is too late to raise the question of the original invalidity of the contract under which they had proceeded. *Delta Molded,* 416 F.Supp. at 946.

■ Applying the principles of law above discussed to the facts of this case, this Court determines and holds that which is prohibited by Alabama law are suits on *contracts* by non-qualified corporations. *Jones v. Americar, Inc.,* 283 Ala. 638, 219 So.2d 893 (1969). However, the *property rights* resulting from such contracts are enforceable. Accordingly, the fact [arguendo] that LSC's assignor, Chatham, was a non-qualified corporation at the time it entered into the lease agreement with River City does not prevent this suit to enforce property rights by LSC.

Because the Court finds and holds that the interstate commerce exception and/or the property rights exception are here applicable which enables LSC to successfully counter the assertion of the failure to qualify defense, a discussion of other possible exceptions to such defense is unnecessary.[6]

### *Validity of the Security Agreement*

The Bank and Hobbs next attack the validity of the LSC security agreement itself. Fraud, unconscionability and failure to perfect due to an insufficient and/or misleading security agreement are asserted as defenses to this LSC action.

The Bank asserts that LSC is not entitled to enforce its blanket security interest because of LSC's purported fraud. In the previous case (*Leasing Service Corp. v. River City Construction,* CV 82–P–0056–S, *aff'd with damages reduced,* 743 F.2d 871 (1984)) this defense was raised by River City. The Eleventh Circuit Court of Appeals held that the fraud in the inducement defense was ineffective against LSC because LSC was a holder-in-due-course. The Court first quoted a provision of the lease agreement:

> Lessee further acknowledges notice of the intended assignment of this lease to [Leasing Service] and upon such assignment, Lessee agrees not to assert against the Lessor and any subsequent Assignee any defense, setoff, recoupment, claim or counterclaim which Lessee may have against the original lessor. . . .

and then discussed the applicable law:

> Because of the great protection these waivers afford an assignee, they are valid only if the assignee takes the assignment for value, in good faith, and without notice of any claim or defense. These are the Code's requirements for

---

**6.** While the issue has not been briefed or argued, the Court seriously questions whether under Alabama law the failure to qualify defense can validly be asserted by third party strangers to the contract such as the Bank and Hobbs.

the status of a holder in due course. *Id.* at 876.

The Court then concluded LSC was a holder-in-due-course and therefore the defense of fraud in the inducement was ineffective as a defense against LSC. Given this holding, neither Hobbs nor the Bank can successfully assert this defense here.

The Eleventh Circuit also dismissed the defense of "fraud in the factum." The Court stated that fraud in the factum is a defense even against a holder-in-due-course, under *Ala. Code* § 7–3–305 (1975) only if:

> (c) such misrepresentation ... has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms.

The Court further stated:

> According to the Official Comment to section 3–305:

> > "The test of the defense here is that of excusable ignorance.... In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education, and business experience; ... the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him ...; and the apparent necessity, or lack of it, for acting without delay."

U.C.C. § 3–305 comment 7. We uphold the district court's implicit finding that there was no defense under section 3–305. Although the defendant has only an eighth-grade education, he is president of a construction company with projects in Georgia, Alabama, and Mississippi. He has leased heavy equipment before. There was no rush in the transaction: Dent was first approached in the spring of 1980 about the leasing transaction; the forms were not executed until June. Although we can readily sympathize with Dent's claim that he did not understand the terms of this lease, we

cannot overlook the fact that Dent had a full opportunity to study the agreement or to seek the aid of counsel. The case thus fails to clear the second of the two hurdles for a defense of fraud against an assignee with the same status as that of a holder in due course. *Leasing Service Corporation,* 743 F.2d 877–78.

The disposition of these issues in the previous case are res judicata in this suit, assuming without deciding that third-party strangers [Hobbs and the Bank] to the Chatham–LSC–River City transaction have standing to raise such issues in this civil action. See *Carlisle v. Phenix City Bd. of Ed.,* 849 F.2d 1376 (11th Cir.1988); *Hurt v. Pullman, Inc.,* 764 F.2d 1443 (11th Cir. 1985); *Aerojet–General Corp. v. Askew,* 511 F.2d 710 (11th Cir.1975). As to the claim of unconscionability, this assertion is simply without merit and does not deserve discussion.

The Bank's final defense against the validity of the Chatham–River City equipment lease agreement (of which LSC is assignee) asserts that LSC's security interest arising therefrom was not perfected due to an inadequate and/or misleading description of the collateral contained in the financing statement and the equipment lease agreement.

In this case, LSC filed a financing statement consisting of two documents. The first document was an UCC–1 form in which LSC claimed a security interest in:

> All machinery, inventory, equipment and good as described in the attached entire agreement....

In the "attached entire agreement" is the second document—the equipment lease agreement, which contained the following language:

> In any jurisdiction where the Uniform Commercial Code is in effect, Lessee grants to Lessor a security interest in the equipment and any and all inventory, goods, equipment, machinery, fixtures and assets of any and every kind, wherever located, now or hereafter belonging to Lessee....

The equipment lease agreement also contained a space in the upper left corner

entitled "Description of Equipment." In this space is typed a description of the two cranes which were the subject of the lease. The blanket security interest quoted above is contained near the bottom of the document in a long paragraph. It is the Bank's contention that because of the location of the blanket security interest language the financing statement is misleading or fails to reasonably identify the collateral claimed by LSC. Furthermore, while conceding that a description of "all equipment" would be sufficient, the bank asserts that the phrase "all ... equipment ... as described in attached entire agreement" limits the inquiry of a lien searcher.

The purpose of filing a financing statement is to put parties on notice of a creditor's security interest. Official Comment 2 *Ala.Code* § 7–9–402 provides in part:

> The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. *Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Section 7–9–208 provides a statutory procedure under which the secured party, at the debtor's request, may be required to make disclosure.* Notice filing has proved to be of great use in financing transactions involving inventory, accounts and chattel paper, since it obviates the necessity of refiling on each of a series of transactions in a continuing arrangement where the collateral changes from day to day. Where other types of collateral are involved, the alternative procedure of filing a signed copy of the security agreement may prove to be the simplest solution. (Emphasis added)

It has been held that a financing statement is sufficient if it gives notice that "there is need for investigation" as to the scope of the security interest *Associates Capital Corp. v. Bank of Huntsville,* 49 Ala.App. 523, 526, 274 So.2d 80 (1973). The court further stated:

> The purpose of filing the financing statement is notice to any third party. *The requirement of the description of the collateral is not for the purpose of informing such third party that the exact item which he is considering taking as security is already subject to a prior security interest, without further inquiry, ....* The requirement of "a description that reasonably identifies" is satisfied if it reasonably informs third parties that a certain identifiable item, ... belonging to or in the possession of a debtor may be subject to a prior security interest and that further inquiry is necessary to determine if it is the same [item] being offered them as collateral. Such is known as "notice filing." It merely places other parties on notice that there is need for investigation before taking as security for a loan items of the same type belonging to the debtor or which he intends to purchase. (Emphasis added) *Id.*

Very little is required of a financing statement. *In re Turnage,* 493 F.2d 505 (5th Cir.1974). As to the description of property, the law requires only "a statement indicating the types, or describing the items, of collateral." *Ala.Code* § 7–9–402(1) 1975. "Any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." *Ala.Code* § 7–9–110 (1975). The question in every case is whether the financing statement has reasonably notified third parties that further inquiry must be made to determine exactly what is covered by the security agreement.

■ In this case the financing statement filed by LSC was sufficient to put the Bank and all others on notice that further inquiry was required to determine the scope of the security agreement. The UCC–1 form filed by LSC as a part of its financing statement as assignee of the secured party clearly stated that a security interest was claimed in "all ... equipment ... as described in the *attached entire agreement*" (emphasis added). The lien searcher was not directed to one portion of the agreement but was directed to examine the *entire agreement.* If the lease agreement had been completely read, the blanket security interest claimed would have been evident. For these reasons the Court finds and holds that the

UCC financing statement filed by LSC provided reasonable notice to a diligent title searcher that further inquiry was required to determine the property covered by the security agreement.

■ Having made the above determination, the Court finds LSC has a valid and enforceable first priority security interest in and to the Lorain Crane, the Hobart Welder and in the other equipment of River City.[7] This summary judgment evidentiary record shows without dispute that the Lorain Crane was sold to Hobbs who in turn sold to Bell Construction Company and that the sales proceeds in amount of $75,000 were paid by Hobbs to the Bank under their mutual mistaken belief that the Bank had a first priority perfected security interest in and to the Lorain Crane. In similar fashion and under mutual mistaken belief of River City and the Bank that the Bank had a first priority perfected security interest in and to River City's Hobart Welder, River City sold the Hobart Welder and simultaneously paid the sales proceeds ($10,000) to Colonial. Despite these beliefs these actions constituted a conversion of LCS's property, LSC having at such times the paramount perfected security interest therein. Accordingly, the Court hereby determines and holds that LSC, as plaintiff and third-party plaintiff in this action, is entitled to recover: (1) $75,000.00 from Hobbs, as defendant, representing the proceeds from the Hobbs sale of the referenced Crane, plus accrued interest thereon at the rate of 6% per annum from September 26, 1983, the date of the conversion to the date of entry of order granting LSC's motion for summary judgment; (2) $10,-000.00 from the Bank representing the proceeds received by the Bank from the referenced sale of the Welder, plus accrued interest thereon at the rate of 6% per annum from the date of the Bank's receipt of such sum on May 17, 1985 to the date of entry of order granting LSC's motion for summary judgment; LSC is also entitled to a declaratory judgment declaring and adjudging that its perfected security interest in the Lorain Crane, Hobart Welder and other referenced equipment of River City (and thus in and to the proceeds of sale of such equipment) is paramount to the perfected security interest of the Bank.

### Restitution Claimed by Hobbs

In order to make a full and final determination of all issues before this Court pursuant to the stipulation heretofore referenced, ante, it is necessary to determine Hobbs' entitlement to restitution from Colonial Bank. It is undisputed that Hobbs paid the Bank $75,000.00 under the mutual belief of both parties that the Bank had a first priority perfected security interest in and to the Lorain Crane. It is uncontested that this said amount was applied by the Bank to the account of River City in order that the Bank's lien on the Crane be released and clear title delivered to Hobbs.

■ As a general rule money paid to another under the influence of a mistake of fact, which if was known would have foreclosed payment, is recoverable by the payor. See *Sherrill v. Frank Morris, etc.*, 366 So.2d 251, 157 (Ala.1978); 66 Am.Jur.2d, Restitution and Implied Contracts, § 119, p. 1055; Vol. 11A, Alabama Digest, Implied and Constructive Contracts, Pocket part, p. 110–116, inclusive. Applying the equitable

---

7. The "other equipment" involved in this controversy (or its proceeds) is presently in the joint custody and control of the Bank and LSC. Specifically, as the statement of agreed facts in the Pretrial Order entered herein on June 17, 1986 discloses, the lien disputes here are over: (a) the Lorain Model 785 crane (actually the $75,000.00 sales proceeds paid by Hobbs to the Bank at the time of its purchase from River City and its simultaneous sale to Bell); (b) the Hobart 2300 welder (actually, the $10,000.00 sales proceeds paid by River City to the Bank); and (c) "other equipment" which includes a P & E 435 TC crane and the items of equipment listed on Exhibit "A" which is reproduced in the Appendix hereto and made a part hereof. The "other equipment" remains unsold in the possession of the Bank's agent, except for the P & E 435 TC crane which was sold by mutual consent of the Bank and LSC. The net proceeds from this particular sale were placed in an interest account at Colonial Bank with agreement of the Bank and LSC that the proceeds of such account, including all accrued interest, would be disbursed in conformity with the outcome of this case. As of January 31, 1989 the proceeds of this trust account amount to $24,239.94.

remedy of restitution, the Court finds and holds that Hobbs is entitled to recover the $75,000.00 sum it paid the Bank under the mutual mistaken belief of the parties that the Bank possessed a first priority perfected security interest in and to the Lorain Crane, plus accrued interest thereon at the rate of 6% per annum from the date of the Bank's receipt of such sum from Hobbs to the date of entry of order accompanying this Memorandum of Decision.

Upon careful review of the entire summary judgment record, the Court finds and determines there is no genuine issue as to any material fact in the above entitled civil action with respect to LSC's claims for relief asserted herein against Hobbs and the Bank nor with respect to Hobbs' restitution claim for relief against the Bank and that the respective moving parties are each entitled to judgment as a matter of law. Summary judgment is therefore due to be granted in favor of LSC and against Hobbs and Colonial Bank. Moreover, Hobbs is entitled to restitution from the Bank in the amount of $75,000.00, plus accrued interest thereon at the rate of 6% per annum from the date of the Bank's receipt of such funds to the date of entry of order accompanying this Memorandum of Decision. Thus, Hobbs is entitled to summary judgment in its favor with respect to its third-party claim for relief against the Bank.

An appropriate order granting the summary judgment motion of LSC with respect to all claims for relief herein asserted against Hobbs and the Bank will be entered, together with declaratory judgment declaring and adjudging that LSC's perfected security interest in and to the Lorain Model 785 Crane, the Hobart Welder and in and to the "other equipment" herein refer-

enced of River City (and thus in and to the proceeds of sale of any such equipment) is paramount and prior to the perfected security interest of the Bank thereto and therein. Furthermore, an appropriate order granting Hobbs' motion for summary judgment in its favor with respect to its above referenced claim for relief against the Bank for restitution will also be entered.[8] Finally, an order will be entered denying the motions of Hobbs and the Bank for summary judgment in their favor with respect to plaintiff LSC's claims for relief herein against these movant parties.

DONE.

## EXHIBIT A

### SCHEDULE OF PROPERTY TO BE SOLD AT PRIVATE SALE(S)

1  1966 Alabama Tandem 42′ flat bed trailer

1  Jaeger 150 CFM Air Compressor powered with gasoline engine, Serial # RC30650

1  Lincoln diesel welding machine, Serial # A909920–000410

1  Lincoln diesel welding machine, Serial # A909945–000411

1  Lincoln diesel welding machine, Serial # A909872–000441

1  Airco gasoline welding machine, Serial # HD–673442

1  Lincoln gasoline welding machine, Serial # 650880

1  Airco gasoline welding machine, Serial # HF838947

1  Airco gasoline welding machine, Serial # HJ218560

---

**8.** This Court is not unaware of the former Fifth Circuit Court decisions in *Capital Film Corp. v. Charles Fries Productions,* 628 F.2d 387, 390–91 (1980), and in *Sharlitt v. Gorinstein,* 533 F.2d 282 (5th Cir.1976), both prohibiting sua sponte entry of summary judgment by the district court, and that under *Bonner v. Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981), these former Fifth Circuit court decisions are to be treated as binding precedent in the Eleventh Circuit unless overruled en banc by the Eleventh Circuit Court of Appeals. However, it is the distinct understanding of this Court that Hobbs and the Bank

(Colonial) have both urged the Court in brief and otherwise to proceed and determine *all of the issues* in this litigation, including their controversy which emerges simultaneously with the Court's ruling that LSC had [has] the first priority perfected security interest in and to the Lorain Model 785 Crane and thus is entitled to recover of Hobbs under its conversion claim for relief against Hobbs the $75,000.00 sales proceeds (with appropriate interest) which Hobbs paid to the Bank at the direction of River City on September 26, 1983.

1 Airco gasoline welding machine, Serial # H6038995

1 Airco gasoline welding machine, Serial # HHD46093

1 Airco gasoline welding machine, Serial # HHD59159

1 Lincoln electric welding machine, Serial # A83848

1 Lincoln electric welding machine, Serial # A130874

1 Ingersoll Rand 100 CFM Air Compressor powered with diesel engine, Serial # 109527

1 Van Trailer Tandem (40′ × 45′ Storage)

1 Van Trailer single rear (30′–35′ Storage)

2 2–yard Concrete Buckets (Bottom Dump)

1 Jaeger Air Compressor 125 CFM (For Parts)

## SUMMARY JUDGMENT ORDER

In conformity with Memorandum of Decision entered this date in the above entitled civil action, it is

ORDERED, ADJUDGED and DECREED that the motion of plaintiff Leasing Services Corporation ("LSC") for summary judgment in its favor in the above entitled civil action: (1) against defendant Hobbs Equipment Company ("Hobbs") with respect to its conversion claim for relief stated in its complaint against such defendant both on the issue of Hobbs' liability to LSC thereunder and on the issue of damages to which LSC is entitled to have and recover of Hobbs thereunder; (2) and against third-party defendant Colonial Bank of North Alabama (the "Bank"), successor by merger with the Bank of Moulton, with respect to: (i) Count One of LSC's third-party complaint, as amended, against the Bank, as third-party defendant, for conversion by the Bank of the $75,000.00 proceeds it received in September 1983 from the September 1983 sale of the Lorain Model 785 Crane by River City Construction Company, Inc. ("River City") to Hobbs Equipment Company ("Hobbs"), both on the issue of the Bank's liability to LSC for its receipt of and ownership dominion over such funds and on the issue of damages to which LSC is entitled to have and recover of the Bank under Count One; (ii) Count Two of LSC's third-party complaint, as amended, against the Bank, as third-party defendant, for declaratory judgment that LSC's perfected security interest in and to certain River City equipment described with particularity in Exhibit "A" to LSC's third-party complaint against the Bank is and was at all relevant times superior to the perfected security interest of the Bank in and to such equipment and that LSC is entitled to the immediate possession thereof in its capacity as the party with the superior perfected security interest therein and/or to the immediate possession and ownership of all proceeds received from the sale of any such equipment by the mutual consent of LSC and the Bank, together with all interest accrued thereon; and (iii) Count Three of LSC's third-party complaint, as amended, against the Bank, as third-party defendant, for declaratory judgment (and ancillary monetary relief) that LSC's perfected security interest in and to that certain Hobart 2300 Welder owned by River City (which was sold by River City on February 7, 1983 to Decatur Erectors for $10,000.00 cash with sales proceeds simultaneously paid by River City to the Bank) is and was at all relevant times superior to the security interest of the Bank in and to such equipment item, both on the issue of the Bank's liability to LSC for its receipt of and ownership dominion over such funds and on the issue of damages to which LSC is entitled to have and recover of the Bank under Count Three, be and the same are [each] hereby GRANTED and ENTERED. And it is further

ORDERED, ADJUDGED and DECREED that the motion of third-party plaintiff Hobbs Equipment Company ("Hobbs") for summary judgment in its favor against third-party defendant Colonial Bank of North Alabama (the "Bank") in the above entitled action with respect to its restitution claim for relief herein asserted against such third-party defendant for all sums to which plaintiff LSC is found to be entitled to have and recover of Hobbs, as defendant, under plaintiff LSC's complaint

herein against defendant Hobbs, both on the issue of the Bank's liability to Hobbs under such third-party complaint and on the issue of damages to which Hobbs is entitled to have and recover of the Bank thereunder is hereby GRANTED and ENTERED. And it is further

ORDERED, ADJUDGED and DECREED that the motion of defendant Hobbs Equipment Company ("Hobbs") for summary judgment in its favor and in favor of the third-party defendant Colonial Bank of North Alabama (the "Bank") with respect to all claims for relief asserted by plaintiff Leasing Service Corporation ("LSC") in plaintiff's complaint in the above entitled civil action (or as last amended) and the motion of third-party defendant Colonial Bank of North Alabama (the "Bank") for summary judgment in its favor and in favor of defendant Hobbs Equipment Company ("Hobbs") with respect to all claims for relief asserted by plaintiff Leasing Service Corporation ("LSC") set forth by plaintiff in its complaint (or as last amended) in the above entitled civil action be and the same hereby are each DENIED.

The Court has expressly found and determined and hereby finds and determines that there is no genuine issue as to any material fact with respect to: (1) plaintiff LSC's above referenced conversion claim for relief against defendant Hobbs asserted in plaintiff's complaint against defendant Hobbs; (2) third-party plaintiff LSC's claims for relief against the third-party defendant Bank stated in Count One, Count Two and Count Three of LSC's third-party complaint against the Bank, as third-party defendant; and (3) third-party plaintiff Hobbs' claim for relief over against the third-party defendant Bank stated in Hobbs' third-party complaint against the Bank, as third-party defendant; that plaintiff LSC (as the moving party) is entitled to judgment as a matter of law with respect to its asserted claim for relief in its complaint herein against the defendant Hobbs; that third-party plaintiff LSC (as the moving party) is entitled to judgment as a matter of law with respect to its Count One, Count Two and Count Three claims for relief stated in its third-party complaint herein against the third-party defendant Bank; that third-party plaintiff Hobbs is entitled to judgment over as a matter of law with respect to its asserted claim for relief in its third-party complaint herein against the third-party defendant Bank; and that there is no just cause or reason for delay in entry of final judgment in the above entitled civil action: (i) in favor of plaintiff LSC and against the defendant Hobbs with respect to plaintiff's claim for relief stated in its complaint against defendant Hobbs; (ii) in favor of third-party plaintiff LSC and against the third-party defendant Bank with respect to third-party plaintiff LSC's Count One, Count Two and Count Three claims for relief stated in its third-party complaint, as amended, against the third party defendant Bank; and (iii) in favor of third-party plaintiff Hobbs and against the third-party defendant Bank with respect to third-party plaintiff Hobbs' claim for relief stated in its third-party complaint against the third-party defendant Bank.

The Court directs entry of final judgment in the above entitled civil action as hereinabove adjudicated by separate order pursuant to Rule 58, Fed.R.Civ.P.

## RULE 58 FINAL JUDGMENT

In conformity with Summary Judgment Order entered in the above entitled civil action this date, it is

ORDERED, ADJUDGED and DECLARED that plaintiff and third-party plaintiff LEASING SERVICE CORPORATION ("LSC") in the above entitled civil action is now and/or was at all times relevant to this litigation the owner and holder of a perfected first priority security interest under the Uniform Commercial Code of the State of Alabama in and to:

[1] those certain River City Construction Company, Inc. ("River City") items of equipment now in the possession of an agent of third-party defendant Colonial Bank of North Alabama ("Bank") and particularly described in Exhibit "A" which is reproduced in the

Appendix hereto and made a part hereof;

that the perfected security interest of plaintiff and third-party plaintiff LSC in and to such referenced River City equipment is now and was at all times relevant superior to the perfected security interest of the third-party defendant Bank under the Uniform Commercial Code of the State of Alabama; and that the plaintiff and third-party plaintiff is entitled to the immediate possession and control of the above referenced equipment for its disposition thereof in conformity with Alabama's Uniform Commercial Code with the net proceeds therefrom to be applied by LSC as a payment credit by the judgment debtor on that certain unpaid and outstanding monetary judgment obtained by LSC against River City in the United States District Court For The Northern District of Alabama, Case No. CV 82–P–0056–S;

[2] those certain trust account proceeds now on deposit at Colonial Bank of North Alabama ("Bank") under the joint control of LSC and the Bank, together with the principal deposit to such account and all accrued interest thereon [amounting to $24,239.94 as of 1–31–89], representing the net sales proceeds realized [together with accrued interest] from the sale of that certain River City equipment item described as a P & E 435 TC crane conducted and held by the mutual consent of LSC and the Bank, as the respective owners and holders of a perfected security interest therein under the Uniform Commercial Code of the State of Alabama;

that plaintiff and third-party plaintiff LSC is entitled to the immediate possession and sole ownership of the funds above referenced and that such funds shall be applied by LSC as a payment credit by the judgment debtor on that certain unpaid and outstanding judgment obtained by LSC against River City in the United States District Court For the Northern District of Alabama, Case No. CV 82–P–0056–S;

[3] that certain Lorain Model 785 Crane owned by River City and sold by River City on September 26, 1983 to Hobbs Equipment Company ["Hobbs"], Nashville, Tennessee, for a cash purchase price of $75,000.00 delivered and paid over on such date by Hobbs to the Bank at the direction of River City and the Bank;

[4] that certain Hobart 2300 Welder owned by River City and sold by River City to Decatur Erectors on May 17, 1975 for a cash purchase price of $10,-000.00 simultaneously paid over to the Bank by River City for application on River City's indebtedness to the Bank;

that the perfected security interest of plaintiff and third-party plaintiff LSC in and to the River City items of equipment referenced in [3] and [4] above was at the time and date of each such transaction superior to the perfected security interest of the third-party defendant Bank under the Uniform Commercial Code of the State of Alabama and attached simultaneously to the respective proceeds from the sale of such equipment; and that from the respective dates of payment of such proceeds to the Bank to the date hereof the plaintiff and third-party plaintiff LSC has been continuously entitled to such funds as the owner thereof in its capacity as the owner and holder of a perfected first priority security interest therein and thereto; and it is further

ORDERED, ADJUDGED and DECREED that plaintiff and third-party plaintiff Leasing Service Corporation ("LSC") have and recover of third-party defendant Hobbs Equipment Company ("Hobbs") under plaintiff's complaint against Hobbs, as defendant, the sum of $99,164.38, representing the principal sum of $75,000.00, with accrued interest thereon at the rate of 6% per annum from September 26, 1973 to the date hereof in amount of $24,164.38, for which let execution issue.

ORDERED, ADJUDGED and DECREED that defendant and third-party plaintiff Hobbs Equipment Company ("Hobbs") have and recover of third-party defendant Colonial Bank of North Alabama ("Bank") in the above entitled civil action under Hobbs' third-party complaint against the Bank, as third-party defendant, the

sum of $99,164.38, representing the principal sum of $75,000.00, together with accrued interest thereon at the rate of 6% per annum from September 26, 1983 to the date hereof in amount of $24,164.38, for which let execution issue. And it is further

ORDERED, ADJUDGED and DECREED that plaintiff and third-party plaintiff Leasing Service Corporation ("LSC") have and recover of third-party defendant Colonial Bank of North Alabama ("Bank") in the above entitled civil action under Count Three of the third-party plaintiff LSC's third-party complaint against the Bank, as third-party defendant, the sum of $12,237.26, representing the principal sum of $10,000.00, together with accrued interest thereon at the rate of 6% per annum from May 17, 1975 to the date hereof in amount of $2,237.26, for which let execution issue. And it is further

ORDERED, ADJUDGED and DECREED that plaintiff and third-party plaintiff Leasing Service Corporation ("LSC") have and recover of third-party defendant Colonial Bank of North Alabama ("Bank") in the above entitled action under Count One of LSC's third-party complaint against the Bank, as third-party defendant, the additional sum of $99,164.38, representing the principal sum of $75,000.00, together with accrued interest thereon at the rate of 6% per annum from September 26, 1983 to the date hereof in amount of $24,164.38; provided, however, that execution on the within judgment is STAYED pending further order of the Court entered in this cause; and, further provided, that upon full payment by defendant Hobbs and record satisfaction by plaintiff LSC of plaintiff LSC's $99,164.38 judgment rendered and entered against defendant Hobbs [above referenced] and upon full payment by the third-party defendant Bank and record satisfaction by third-party plaintiff Hobbs of Hobbs' $99,164.38 judgment rendered and entered against third-party defendant Bank [above referenced], the Clerk of the Court is authorized and directed by the Court to satisfy of record the within $99,164.38

judgment of third-party plaintiff LSC against the third-party defendant Bank.[1] It is

ORDERED that final judgment is herein RENDERED and ENTERED with respect to the denial by the Court of the respective motions of defendant Hobbs and third-party defendant Colonial Bank of North Alabama for summary judgment in their respective favor on plaintiff's complaint [or as last amended] in the above entitled civil action. And it is further

ORDERED that the costs of this cause are taxed one-fourth against the defendant Hobbs Equipment Company and three-fourths against the third-party defendant Colonial Bank of North Alabama, for which let execution respectively issue.

DONE and ORDERED.

---

1. To prevent double recovery prohibited by Alabama. See *Mercer v. Davis & Berryman International, Inc.,* 834 F.2d 922, 929 (11th Cir.1987).